**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 26-cv-1271-WJM

NAIMA RAMIREZ ANDREU,

   Petitioner,

v.

JUAN BALTAZAR, in his official capacity as
Warden, Denver Contract Detention Facility, *et al*.

   Respondents.

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

  Before the Court is Petitioner Naima Ramirez Andreu's[1] Petition for Writ of

Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition").  (ECF No. 1.)

Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract

Detention Facility; George Valdez,[2] in his official capacity as Acting Field Office Director

for the Denver Field Office of United States Immigration and Customs Enforcement

("ICE"); Todd M. Lyons, in his official capacity as Acting Director of ICE; Markwayne

Mullin, in his official capacity as Secretary of the United States Department of Homeland

Security ("DHS"); and Todd Blanche,[3] in his official capacity as Acting United States

---

  [1] Petitioner is identified elsewhere in the Petition and the supporting documentation attached thereto as "Naima Ramirez Ramirez Andreu."  (*See e.g.,* ECF No. 1 at ¶ 18; ECF No. 1-1 at 4.)

  [2] The Petition originally named Robert Hagan, for whom the Government substituted Valdez pursuant to Fed. R. Civ. P. 25(d).

  [3] The Petition originally named Pamela Jo Bondi, for whom the Government substituted Mullin pursuant to Fed. R. Civ. P. 25(d).

Attorney General (collectively, "Respondents" or "the Government"), filed a response. (ECF No. 8.)  At the Court's direction, Andreu filed a reply.  (ECF No. 10.)

For the following reasons, the Petition is granted.

## I.    BACKGROUND[4]

Andreu is a native and citizen of Cuba who first entered the United States on August 4, 2024.  (ECF No. 1 at ¶ 18.)  At that time, Customs and Border Patrol ("CBP") agents processed her parole into the United States under § 212(d)(5) of the Immigration and Nationality Act ("INA") and served her with a Notice to Appear ("NTA") in removal proceedings.  (*Id.;* ECF No. 1-1 at 9.)

Andreu states that she was paroled for two years into the United States, (ECF No. 1 at ¶ 18), which is corroborated by DHS documentation in the record, (ECF No. 1-1 at 5 ("The subject was Paroled for 2 years pending 240 proceedings."); *id.* at 6 ("The subject was paroled for two years and provided with the EOIR Address closest to their area.").)  The Government, however, submits that Andreu was only granted parole for less than a year, until April 18, 2025, as reflected in her most recent Form I-94.  (ECF No. 8-1 at ¶ 7; ECF No. 1-1 at 25.)

On December 11, 2025, Andreu was arrested following a domestic dispute. (ECF No. 1 at ¶ 19.)  Andreu submits that she called the police for help when her then-partner tried to rape her, but she herself was arrested for domestic violence based on her efforts to defend herself.  (*Id.;* ECF No. 1-1 at 14.)  The criminal charges against her were later dismissed and the files sealed.  (ECF No. 1 at ¶ 19.)

---

[4] All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Nevertheless, Andreu was transferred to the custody of ICE following her arrest and has been detained at the Denver Contract Detention Facility since.  (*Id.* at ¶¶ 12, 19.)  Andreu states she "is finding it difficult to manage her epilepsy, high blood pressure, diabetes, and asthma" while in detention.  (*Id.* at ¶ 20.)  And separate from her physical health problems, Andreu also suffers from insomnia, anxiety, and depression due to the physical and sexual abuse she suffered at the hands of her ex-partner.  (ECF No. 1-1 at 14.)

Andreu now challenges the legality of her detention under 8 U.S.C. § 1225(b) and asks the Court to order her immediate release from custody.  (ECF No. 1 at ¶ 8.)

## II.    LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004).  More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such cases."  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws...of the United States")).  "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'"  *McIntosh v. U.S. Parole Com'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III.    ANALYSIS

Andreu contends that her purported mandatory detention under § 1225(b)

violates the INA, its implementing regulations, the Administrative Procedures Act ("APA"), and her Fifth Amendment Due Process rights.  (*See generally* ECF No. 1.) While the parties substantially focus on whether Andreu's current detention is governed by § 1225(b) or § 1226(a), the Court finds it ultimately need not resolve that question.[5] Based on the Court's review of the record, the reason Andreu's present detention is unlawful is simple: Andreu's grant of humanitarian parole was still valid when she was re-detained in December 2025 and remains so now.

The parties agree that Andreu was paroled under 8 U.S.C. § 1182(d)(5)(A) upon her entry into the United States in August 2024.  (ECF No. 8 at 3; ECF No. 10 at 4.) Under that provision,

> [t]he Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of the Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).  Applicable implementing regulations set forth two mechanisms by which a grant of parole under § 1182(d)(5) may be terminated.  First,

---

[5] The Court acknowledges there is a difference of opinion among some judges in this District as to whether the detention of a noncitizen whose prior grant of humanitarian has expired or terminated is governed by § 1225(b) or § 1226(a).  *Compare, e.g., Rafibaev v. Noem,* 2026 WL 607559, at *5 (D. Colo. Mar. 4, 2026) (concluding re-detention of petitioner whose humanitarian parole had expired was governed by § 1226(a)) *with Depelian v. Baltazar,* No. 25-cv-03765-SKC-TPO (D. Colo. Jan. 20, 2026), ECF No. 18 (finding detention of petitioner whose humanitarian parole was terminated was governed by § 1225(b)).  Given, here, Andreu has a continuing valid grant of parole in any case, the Court expresses no opinion on that issue.

"[p]arole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized . . . ."  8 C.F.R. § 212.5(e)(1).  Second,

> upon accomplishment of the purpose for which parole was authorized when in the opinion of one of the officials listed in . . . this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole.  When a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified.

*Id.* § 212.5(e)(2)(i).

The Court begins by considering the initial duration of Andreu's humanitarian parole.  As noted, Andreu has appended DHS-issued documentation evidencing that she was initially paroled for a period of two years.  (ECF No. 1-1 at 5, 6.)

The Government, on the other hand, has submitted a declaration from her Deportation Officer, in which he states that Andreu was "initially granted" parole "until April 18, 2025."  (ECF No. 8-1 at ¶ 7.)  This statement is unaccompanied by any citation to documentary evidence in the record, but it is presumably derived from Andreu's most recent Form I-94, which likewise reflects an "Admit Until Date" of April 18, 2025.  (ECF No. 1-1 at 25.)  Form I-94s, however, are subject to change.  *See, e.g., Alcide v. de Anda-Ybarra,* 2026 WL 622663, at *1 (D.N.M. Mar. 5, 2026) (recounting instance where petitioner's Form I-94 authorized a two year-period of parole but was later "adjusted to reflect" earlier expiration date of April 18, 2025 after Respondents purported to terminate his parole).  The "Admit Until Date" on Andreu's Form I-94 is thus an unreliable indicator of the date Andreu's humanitarian parole was set to expire as an

original matter.[6]  Accordingly, based on the evidence in the record, the Court finds Andreu's initial grant of parole was intended to continue for a period of two years—or until approximately August 2026.

The question then becomes whether Andreu's two-year period of parole lawfully terminated in accordance with the provisions of § 212.5(e).  The Government does not argue that Andreu's parole automatically terminated under § 212.5(e)(1).[7]  Rather, her Deportation Officer submits that her parole terminated by written notice under § 212.5(e)(2)(i) "on August 4, 2024," when "DHS issued a Notice to Appear (NTA), initiating removal proceedings under 8 U.S.C. § 1229a, before the Executive Office for Immigration Review (EOIR)."  (ECF No. 8-1 at ¶ 7.)  In other words, the Government argues it simultaneously granted and terminated Andreu's parole by serving her with a NTA alongside a Form I-94.  That is a patently absurd proposition.  "[S]ervice of a charging document terminating parole while simultaneously granting parole through a Form I-94 would render the notice requirement a nullity."  *Alcide,* 2026 WL 622663, at *4.[8]

---

[6] The Court can only speculate as to the reason Andreu's Form I-94 reflects an "Admit Until Date" of April 18, 2025.  But it strongly suspects that her humanitarian parole was incorrectly terminated in conjunction with the Administration's decision to end the Cuba, Haiti, Nicaragua, Venezuela ("CHNV") categorial parole program.  *See* Termination of Parole Process for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025).  It is not necessarily the case that Andreu entered the country pursuant to the CHNV parole program merely because she is a Cuban citizen.  *See Aldana v. Collins,* --- F. Supp. 3d ---, 2026 WL 673827, at *3 (W.D. Tex. Mar. 9, 2026) (concluding Cuban petitioner "could not have entered the country pursuant to a CHNV parole program" because where he did not satisfy its special conditions, and finding instead "he must have been given a grant of humanitarian parole under 8 U.S.C. § 1182(d)(5)).  Nor does the Government contend that she was.

[7] The absence of any argument from the Government that Andreu's parole would have automatically expired on April 18, 2025 further persuades the Court that date never marked the initial expiration of her parole.

[8] Moreover, even if the Government's argument were correct, wouldn't Andreu's Form I-

Andreu submits there is otherwise "nothing to support the assertion that her parole was ever officially terminated." (ECF No. 10 at 2.) And indeed, the Government has adduced no such evidence. The Court thus finds that Respondents have failed to follow the applicable procedural requirements to terminate Andreu's parole pursuant to § 1182(d)(5)(A). As a result, her initial two-year grant of parole remains valid. *Cf. Alcide,* 2026 WL 622663, at *4; *Aldana*, 2026 WL 673827, at *4.

The "detention of a noncitizen who has a valid grant of humanitarian parole violates the INA and its implementing regulations." *Aldana*, 2026 WL 673827, at *4. Moreover, Respondents' failure to provide written notice in accordance with § 212.5(e)(2) is a violation of Andreu's procedural due process rights. *Cf. Alcide,* 2026 WL 622663, at *4 (concluding similarly after analyzing the factors set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976)). Under these circumstances, the Court concludes the appropriate remedy is immediate release. *Cf. Alcide,* 2026 WL 622663, at *7, 8 (ordering immediate release after finding petitioner's grant of humanitarian parole was still valid when he was re-detained*); Aldana,* 2026 WL 673827, at *4 (same).

## IV.    CONCLUSION

For all these reasons, the Court ORDERS as follows:

1.    The Court's Order to Show Cause (ECF No. 5) is MADE ABSOLUTE and Andreu's Petition (ECF No. 1) is GRANTED;

2.    The Court GRANTS this relief to Andreu pursuant to Claims 1 and 3 of the Petition, and partially pursuant to Claim 2 of the Petition. The Court does not reach the merits of that portion of Claim 2 asserting an APA violation;

---

94 reflect an "Admit Until Date" of August 4, 2024?

3.      **By no later than this Sunday, April 19, 2026,** Respondents shall IMMEDIATELY RELEASE Andreu, along with all her personal belongings, subject only to the conditions of her pre-existing parole.  **No additional conditions of release shall be imposed on Andreu by Respondents**;

4.      Respondents are ENJOINED from re-arresting or re-detaining Andreu unless, **prior thereto**, her parole is properly terminated by adequate written notice in accordance with 8 C.F.R. § 212.5(e).  This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

5.      Respondents shall also continue to be ENJOINED from removing or transferring, or causing to remove or transfer, Andreu from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6.      The parties shall file a Joint Status Report **by no later than May 15, 2026;** and

7.      The Court will enter a separate judgment in Andreu's favor and against Respondents at the appropriate time, after it is persuaded the Respondents are and remain in full compliance with the terms of this Order and all binding constitutional and statutory requirements.

Dated this 17th day of April, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge

8